# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2021

Lyle W. Cayce
Clerk

No. 20-70005

Howard Paul Guidry,

*Petitioner—Appellant,*

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1885

Before Willett, Ho, and Oldham, *Circuit Judges.*

Per Curiam:

We withdraw the court's prior opinion of April 21, 2021 and substitute the following opinion.

Howard Paul Guidry was convicted of capital murder in Texas and sentenced to death. On federal habeas corpus review, the district court granted Guidry relief, and this court affirmed the grant of relief. Guidry was retried and resentenced to death. After pursuing direct review and habeas relief in state court, Guidry again sought federal habeas corpus relief under 28 U.S.C. § 2254. The district court denied relief on all claims. Guidry now

No. 20-70005

seeks a certificate of appealability ("COA") from this court.  We deny him a COA.

## I.

## A.

Farah Fratta ("Farah") was murdered in November 1994.  Her husband, Robert Fratta ("Fratta"), had hired Joseph Prystash to kill her. Prystash enlisted his neighbor, Howard Paul Guidry, as the gunman.

On the night of the murder, a gunman approached Farah as she exited her car in her garage.  The gunman shot Farah twice in the head.  Farah's neighbors, the Hoelschers, heard a gunshot and Farah screaming.  Mr. Hoelscher saw Farah fall and then heard a second gunshot.  Then the Hoelschers watched the gunman, an African-American man, emerge from behind a large bush.  The gunman got into a silver or gray car that had one headlight out, and the car drove off.  The Hoeschlers could not describe the gunman in detail.

The police investigation centered on three participants:  a gunman, a getaway driver, and Fratta.  The police suspected Fratta because he and Farah were going through a bad divorce.  Fratta openly wanted Farah dead and tried to hire people to kill her.  As for the other two suspects, a woman named Mary Gipp told police that Fratta hired her boyfriend, Joseph Prystash, to kill Farah and that Prystash recruited Guidry as the gunman.

The police arrested Guidry in March 1995 as he fled from a bank robbery.  At the time of his arrest, Guidry possessed a gun belonging to Fratta.  Guidry also confessed to being the gunman who shot Farah.  Guidry's trial focused heavily on that confession.  A jury found Guidry guilty of capital murder, and he was sentenced to death in 1997.

**B.**

Guidry sought appellate and habeas relief in the state courts, but they found no reversible error.  The state courts found that Mary Gipp's testimony was inadmissible as hearsay, but harmless because of Guidry's confession.  This court found that Guidry invoked his right to counsel and that police detectives violated that right by inducing Guidry's confession. *See Guidry v. Dretke*, 397 F.3d 306, 327 (5th Cir. 2005), *abrogated by Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).  Because we excluded Guidry's confession, we found that Gipp's testimony was no longer harmless.  Thus, we concluded that there remained "*no* evidence showing Guidry killed Farah Fratta for remuneration—the capital offense for which Guidry was convicted" and granted him habeas relief. *Id.* at 330.

Texas retried Guidry for capital murder in 2007.  Because the State could no longer use Guidry's confession, it relied on testimony from Gipp that avoided hearsay, Guidry's possession of Fratta's gun, ballistics evidence, and Guidry's incriminating statements to others.  The second jury found Guidry guilty of capital murder, and he was again sentenced to death.

On direct appeal, the Texas Court of Criminal Appeals ("TCCA") affirmed Guidry's conviction. *Guidry v. State*, No. AP-75,633, 2009 WL 3369261 (Tex. Crim. App. Oct. 21, 2009).  Guidry also filed a state habeas application, which was denied, and his supplemental applications were dismissed as an abuse of the writ. *Ex parte Guidry*, Nos. WR-47,417-02, WR-47, 417-03, 2012 WL 2423621, at *1 (Tex. Crim. App. June 27, 2012); *see also Ex parte Guidry*, Nos. 47,417-04, WR-47, 417-05, 2018 WL 4472491, at *1 n.1 (Tex. Crim. App. Sept. 19, 2018).  Finally, Guidry sought federal habeas relief under 28 U.S.C. § 2254.  The district court denied his federal habeas petition and refused to grant him a COA.

No. 20-70005

Guidry now seeks a COA from this court to appeal the district court's dismissal of his § 2254 petition. *See* 28 U.S.C. § 2253(c)(1)(A). He raises four issues: (1) whether the admission of Dr. Scott Basinger's testimony was fruit of the poisonous tree; (2) whether the State's peremptory strike of a black juror violated Guidry's right to a fair and impartial jury under *Batson v. Kentucky*, 476 U.S. 79 (1986); (3) whether the State suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (4) whether Guidry received ineffective assistance of trial, appellate, and habeas counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

## II.

To obtain a COA to appeal the denial of a § 2254 petition, Guidry must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). For the claims the district court denied on the merits, a COA will issue only if Guidry shows "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. For claims the district court denied on procedural grounds, a COA will issue only if Guidry shows that reasonable jurists would debate whether the district court's procedural ruling was correct and whether the petition states a valid claim of the denial of a constitutional right on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Federal courts evaluate the debatability of Guidry's constitutional claims under the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, we must not grant habeas relief for any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

4

States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state-court decision is "contrary to" clearly established federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision is an "unreasonable application of" clearly established federal law if it "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Clearly established federal law comprises "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

AEDPA is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (first quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); then quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Accordingly, even if we find that a state court incorrectly applied clearly established federal law, we only intervene if the application was objectively unreasonable. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).

Thus, to obtain a COA, Guidry must show that "jurists of reason could disagree with the district court's conclusion that the state court's decision was not [contrary to or] an unreasonable application of clearly established federal law and was not based upon an unreasonable

determination of the facts in light of the evidence presented." *Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018) (per curiam).

## A.

We start with Guidry's merits claims. The first issue Guidry seeks to certify for appeal is whether the admission of Dr. Basinger's testimony was fruit of the poisonous tree. Dr. Basinger was a defense expert in Guidry's first trial. On cross-examination, the prosecution elicited that Guidry told Dr. Basinger that he shot Farah. When the State subpoenaed Dr. Basinger to testify in the second trial, Guidry objected that his statements to Dr. Basinger were the direct result of his illegally obtained confession to police. The trial court denied Guidry's motions and permitted Dr. Basinger to testify.

To support certification, Guidry argues that the use of Dr. Basinger's testimony in his second trial violated his Fifth Amendment rights under *Harrison v. United States*, 392 U.S. 219 (1968). In *Harrison*, the defendant made three confessions to police. *Id.* at 220. At trial, Harrison took the stand to testify on his own behalf. *Id.* An appellate court determined that his confessions were illegally obtained and reversed his conviction. *Id.* At the retrial, the prosecutor read Harrison's testimony from the first trial to the jury. *Id.* at 221. The Supreme Court held that Harrison's testimony in the first trial was impelled by the illegally obtained confessions, and therefore was fruit of the poisonous tree which could not be used in the second trial. *Id.* at 222. The Supreme Court made clear that its holding in *Harrison* did not extend to the testimony of third-party witnesses. *Id.* at 223 n.9. Further, the Supreme Court has clarified that "the rule announced in *Harrison*" means that "compelling the defendant to testify in rebuttal" to an inadmissible confession "precludes use of that testimony on retrial." *Oregon v. Elstad*, 470 U.S. 298, 316–17 (1985).

Here, the TCCA distinguished *Harrison* on several grounds—most notably that the testimony at issue is from a third party and that Guidry never took the stand.  As the Tenth Circuit has written, "*Harrison* is applicable only where a defendant's testimony is impelled by the improper use of *his own* unconstitutionally obtained confessions *in violation of the Fifth Amendment*." *Littlejohn v. Trammell*, 704 F.3d 817, 849 (10th Cir. 2013).  Accordingly, as the district court recognized, Guidry has not identified any clearly established Supreme Court precedent extending *Harrison* to his incriminating statements to his own expert.  We cannot reasonably debate the district court's conclusion that Guidry's attempted extension of *Harrison* precludes relief under AEDPA.  *See Premo v. Moore*, 562 U.S. 115, 127 (2011) ("[N]ovelty . . . [that] renders [a] relevant rule less than 'clearly established' . . . provides a reason to reject it under AEDPA.").

Guidry also relies on our decision in *Smith v. Estelle*, 527 F.2d 430 (5th Cir. 1976).  But that case dealt only with the situation where an unlawful confession impelled the defendant himself to testify.  *See id.* at 433–34.  Thus, Guidry's argument fails for the same reasons his *Harrison* argument does.

In the district court, Guidry also argued that Dr. Basinger's testimony violated his right against self-incrimination because confessions made during a court-ordered psychiatric evaluation by the State are inadmissible unless the defendant is warned that the results may be used against him.  *See Estelle v. Smith*, 451 U.S. 454, 469 (1981).  This argument fails as well.  Here, Dr. Basinger was not a court-appointed expert, but a private defense expert.  Nor did he conduct a psychological examination.  We held in *Powell v. Quarterman* that a defendant's rights under *Estelle v. Smith* were not violated when the examining doctor was not working for the State or the court.  536 F.3d 325, 343 (5th Cir. 2008).  Thus, Guidry cannot show that jurists of reason would debate that the state-court decision did not violate clearly established federal law as determined by the Supreme Court.

No. 20-70005

Reasonable jurists could not disagree with the district court's conclusion. We deny Guidry a COA on this claim.

**B.**

Second, Guidry seeks a COA on whether the State's peremptory strike of potential juror Matthew Washington, a black man, violated Guidry's right to a fair and impartial jury under *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court and the district court conducted detailed analyses of this issue. Jurists of reason could not disagree with the district court's denial of Guidry's *Batson* claim. Therefore, we deny a COA on this issue.

Claims challenging race-based peremptory strikes require the application of *Batson*'s three-step test:

> First, the claimant must make a *prima facie* showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination.

*United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000) (quotation omitted).

Where, as here, the district court has reached the second step of the *Batson* analysis, "we no longer examine whether a *prima facie* case exists." *United States v. Webster*, 162 F.3d 308, 349 (5th Cir. 1998). At the second step, the prosecutor's explanation need not be "persuasive, or even plausible. . . . [T]he issue is the facial validity of the prosecutor's explanation." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) (quotations omitted). Further, "[w]here, as in this case, the trial judge has entertained and ruled on a defendant's motion charging a *Batson* violation, we review only [the district court's] finding of discrimination *vel non*. . . . In

8

this regard, we apply a clearly erroneous . . . standard of review." *United States v. Terrazas-Carrasco*, 861 F.2d 93, 94 (5th Cir. 1988) (citations and quotations omitted).

In a *Batson* claim, "[t]he party making the claim of purposeful discrimination bears the ultimate burden of persuasion." *Montgomery*, 210 F.3d at 453. Thus, Guidry "must show that the TCCA's factual determinations were mistaken with clear and convincing evidence, and he must also show that the district court's unwillingness to reach that conclusion was itself clear error." *Williams v. Davis*, 674 F. App'x 359, 364 (5th Cir. 2017) (per curiam).

Here, Guidry's jury was composed of one Hispanic, one Asian, two black, and eight white jurors. At the State's request, the trial court only removed one prospective juror, a Hispanic woman, for cause. The State exercised peremptory strikes against four prospective jurors. Three of them were white. The fourth was Washington, a black man.

The prosecutor gave six reasons for striking Washington: (1) his membership in Lakewood Church; (2) his opinion that people commit crimes because they have no education or opportunities; (3) his experience with discrimination; (4) his demeanor which made him hesitant and uncomfortable answering questions; (5) his active membership in the NAACP, which is opposed to the death penalty; and (6) the possibility that the defense would call a witness who was heavily involved with the NAACP.

On appeal, Guidry challenges five of the prosecutor's six reasons. First, Guidry argues that the NAACP explanation is not race-neutral. As the district court notes, there is some debate about this in the lower federal courts. *See, e.g.*, *United States v. Payne*, 962 F.2d 1228, 1233 (6th Cir. 1992) (holding that striking a juror for his membership in an advocacy group such as the NAACP was a race-neutral reason); *but see, e.g.*, *Somerville v. State*, 792

S.W.2d 265, 267–69 (Tex. App.—Dallas 1990, pet ref'd) (holding that a juror's membership in the NAACP is not a race-neutral reason for striking him). But as that debate indicates, there is no clearly established federal law as determined by the Supreme Court on this point. The district court recognized that membership in the NAACP could be "so intertwined with race to render it inherently discriminatory," but found that, in the context of all the other explanations for the strike, this reason did not show that the State was "motivated in substantial part by discriminatory intent." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019) (quotation omitted). No jurist of reason could debate that Guidry does not present clear and convincing evidence to rebut this determination as objectively unreasonable.

Second, Guidry argues that Washington's membership in Lakewood Church was clearly a pretext because the prosecutor accepted two non-black members of Lakewood Church. But as the record makes clear, the prosecutor did not always strike members of Lakewood Church. What's more, the state habeas court expressly analyzed this claim and determined that, unlike Washington, the other two Lakewood members gave "State's-oriented" responses and one of them had only recently started attending Lakewood. Guidry has not shown that jurists of reason would debate this claim.[1]

Third and fourth, Guidry argues that the prosecutor's reliance on Washington's experience with discrimination was pretextual and that the district court did not explicitly credit the prosecutor's demeanor-based reason. While the district court expressed some concern about the prosecutor relying on Washington's experience with discrimination, it

---

[1] Guidry does not seek relief based on religious discrimination, presumably because the Supreme Court to date has not extended *Batson* protections to religious affiliation. *See, e.g.*, *Davis v. Minnesota*, 511 U.S. 1115 (1994) (denying certiorari to review state supreme court decision declining to extend *Batson* to religion).

No. 20-70005

recognized that the prosecutor "did not make the comment in isolation." Rather, the district court found that the prosecution discussed this reason "as a feature of [Washington's] general disposition." This analysis indicates that the district court considered Washington's demeanor and determined that, when viewed "in light of all of the relevant facts and circumstances," these reasons were not "motivated in substantial part by discriminatory intent." *Flowers*, 139 S. Ct. 2243–44. We cannot find this conclusion debatable.

Finally, Guidry cannot debatably show by clear and convincing evidence that the prosecutor's reason that the defense would call a witness who was an NAACP member was pretext. Indeed, when the prosecutor gave this reason, he thought Washington knew the witness. Further, he did not know at the time that the defense did not intend to call that witness.

The Supreme Court has recognized that the evaluation of a prosecutor's intent when striking a juror is at bottom a determination of "credibility and demeanor," which lies "peculiarly within a trial judge's province." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (quotations and citations omitted). We "will not reverse a lower court's finding of fact simply because we would have decided the case differently." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quotations omitted).

Jurists of reason could not disagree with the district court that the state court's decision was not an unreasonable application of clearly established law as determined by the Supreme Court and was not based on an unreasonable determination of the facts. *See Halprin*, 911 F.3d at 255. We deny Guidry a COA on this claim.

### III.

We turn now to Guidry's procedurally defaulted claims. "[A] federal court may not review federal claims that were procedurally defaulted in state

court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Here, the TCCA found that Texas's abuse-of-the-writ doctrine, codified in Article 11.071 § 5(a) of the Texas Code of Criminal Appeals, barred Guidry from bringing a successive state habeas petition. The TCCA's dismissal "'is an independent and adequate state ground for the purpose of imposing a procedural bar' in a subsequent federal habeas proceeding." *Gutierrez v. Stephens*, 590 F. App'x 371, 384 (5th Cir. 2014) (per curiam) (quoting *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008)). Accordingly, we cannot reach the merits of Guidry's defaulted claims unless he overcomes the procedural bar.

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). But a "state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila*, 137 S. Ct. at 2064–65 (quotations omitted).

## A.

First, Guidry seeks a COA for his claim that there is cause for the procedural default of his claim that the State withheld exculpatory fingerprint evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Because Guidry "acknowledges that his *Brady* claim is procedurally defaulted, we must first decide whether that default is excused by an adequate showing of cause and prejudice." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). "A *Brady* violation can provide cause and prejudice to overcome

a procedural bar on a habeas claim." *Thompson v. Davis*, 916 F.3d 444, 455 (5th Cir. 2019). That's because "cause and prejudice parallel two of the three components of the alleged *Brady* violation itself." *Strickler*, 527 U.S. at 282. To establish a *Brady* violation, Guidry must prove that (1) the prosecution suppressed the evidence (cause), (2) the evidence was favorable to him, and (3) it was material to the defense (prejudice). *United States v. Stephens*, 964 F.2d 424, 435 (5th Cir. 1992). A "*Brady* claim fails if the suppressed evidence was discoverable through reasonable due diligence." *Reed v. Stephens*, 739 F.3d 753, 781 (5th Cir. 2014).

Guidry fails to satisfy the cause prong because he cannot show that the State actually suppressed this evidence. The Supreme Court has recognized that the suppression of evidence qualifies as sufficient cause for the failure to assert a *Brady* claim in state court. *See Strickler*, 527 U.S. at 282. Here, Guidry argues that the State recovered usable fingerprints from Farah's car, identified those prints as Vernon Christopher Barlow's, and then suppressed information about Barlow's involvement in the crime. Guidry states that "[i]t is undisputed that the State never disclosed to Guidry's counsel records about fingerprints obtained from Barlow, or that those prints matched latent prints obtained by the police." In support, Guidry relies on the declarations of Alvin Nunnery, who represented Guidry in his first trial, and Tyrone Moncrief, who represented Guidry at his second trial. Both lawyers state that they were never provided with and never reviewed any files relating to fingerprints or Barlow. Both lawyers also state they learned about this information from Guidry's current habeas counsel who pointed it out to them in the State's file.

Guidry's argument is unavailing. That Guidry's trial attorneys say they never saw the fingerprint evidence does not mean the State suppressed it. The State had an open file policy in this case. The prosecution has no duty under *Brady* to show defense counsel where to find exculpatory

evidence in the open file. *See United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997) ("There is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents with a larger mass of material that it has already turned over.") (quotation omitted); *see also Mathis v. Dretke*, 124 F. App'x 865, 877 (5th Cir. 2005).

Moreover, "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). Guidry's habeas counsel found this fingerprint evidence when they asked the State to see Guidry's file. Guidry's file consisted of multiple boxes, some labeled "Guidry," some "Prystash," and some "Fratta." Habeas counsel states that they discovered much of this evidence in the box labeled "Fratta." Nevertheless, with reasonable diligence, habeas counsel found this evidence in what the State provided as "Guidry's file." Thus, to prove the State suppressed the evidence, Guidry must show the material was not in the State's files at the time of trial, and that the State added it later— not just that trial counsel did not see it. There is no evidence in the record that Guidry's trial counsel did not have access to the exact same material or that the State added the material after Guidry's second trial.

Because Guidry cannot show that the State suppressed the fingerprint evidence, he has failed to establish cause for defaulting his *Brady* claim. No reasonable jurist would debate the correctness of the district court's procedural ruling on Guidry's *Brady* claim. We deny a COA on this claim.[2]

---

[2] Because we determine that no reasonable jurist could debate that there was no cause for Guidry's procedural default of his *Brady* claim, we do not discuss the district court's thorough analysis of the materiality of this evidence under the prejudice prong of the test to overcome the procedural bar.

No. 20-70005

## B.

Second, Guidry seeks a COA on whether he received ineffective assistance of counsel (IAC) under *Strickland v. Washington*, 466 U.S. 668 (1984). He alleges that his trial, appellate, and state habeas counsel were all ineffective. Under *Strickland*, a criminal defendant's Sixth Amendment right to counsel is "denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam). But because Guidry defaulted these claims, the procedural bar forecloses review on federal habeas unless Guidry can show cause and actual prejudice. *See Davila*, 137 S. Ct. at 2062 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).

### 1.

First, to the extent Guidry makes a freestanding ineffective assistance of state habeas counsel claim divorced from his ineffective assistance of trial counsel claim, it fails to meet the COA standard. As the Supreme Court has held, "[b]ecause a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default." *Id.* at 2062–63; *see also id.* at 2065. Thus, no reasonable jurist would debate the correctness of the district court's procedural ruling on this claim.

Guidry also argues on appeal that his state habeas counsel abandoned him. *See United States v. Cronic*, 466 U.S. 648 (1984). But Guidry did not make this argument in the district court. "We have repeatedly held that a contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief." *Johnson v. Puckett*, 930 F.2d 445, 448 (5th Cir. 1991). Accordingly, we deny Guidry a COA on this claim.

No. 20-70005

**2.**

Second, Guidry argues that his appellate counsel on direct appeal was ineffective. In the district court, Guidry argued that the ineffectiveness of his state habeas counsel constituted cause to overcome the procedural bar to his ineffective assistance of appellate counsel claim (IAAC).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court created a "narrow, 'equitable . . . qualification' of the rule in *Coleman* that applies where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal." *Davila*, 137 S. Ct. at 2065 (quoting *Martinez*, 566 U.S. at 16, 17). It held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance *at trial* if" state habeas counsel's ineffective assistance caused the default. *Martinez*, 566 U.S. at 17 (emphasis added).

Here, Texas requires prisoners to bring all ineffective assistance of counsel claims in state habeas proceedings. So Guidry argues the *Martinez* exception should apply to his claim of IAAC. But the Supreme Court considered this exact question in *Davila* and "decline[d]" to "extend that exception" to IAAC claims. *Davila*, 137 S. Ct. at 2062–63; *see also Murphy v. Davis*, 737 F. App'x 693, 702–03 (5th Cir. 2018) (per curiam) ("The Supreme Court has recently held that default of an IAAC claim cannot be excused by ineffectiveness of habeas counsel."). Guidry did not raise his IAAC claim in his first habeas petition and the Texas Court of Criminal Appeals dismissed his successive state habeas petition as an abuse of the writ. Because Guidry's IAAC claim is procedurally defaulted with no debatable case for excuse, we deny a COA on it.

On appeal, Guidry makes a new argument. Rather than argue that the ineffective assistance of his habeas counsel caused him to default his IAAC

16

claim, Guidry argues he defaulted his IAAC claim because Texas requires a petitioner to bring his habeas petition concurrently with his direct appeal. *See* TEX. CODE. CRIM. PROC. art. 11.071, § 4. However, Guidry did not make this argument in the district court, and, as noted above, "a contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal." *Johnson*, 930 F.2d at 448. Accordingly, we deny Guidry a COA on this claim.

**3.**

Third, and finally, Guidry argues that his trial counsel was constitutionally deficient. He contends that reasonable jurists would debate the correctness of the district court's denial of relief. The State responds that Guidry's ineffective assistance of counsel claim is procedurally barred. Relying on the *Martinez* exception, Guidry replies that the ineffectiveness of his state habeas counsel (IASHC) provides cause to overcome the procedural default of his ineffective assistance of trial counsel (IATC).

When we have applied *Martinez* in the COA context, we have held that "to succeed in establishing cause, the petitioner must show (1) that his claim of ineffective assistance of counsel at trial is substantial—i.e., has some merit—and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceeding." *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013) (citing *Martinez*, 566 U.S. at 14). Mindful that the COA inquiry is "not coextensive with a merits analysis," we limit our examination to a threshold inquiry of the underlying merits. *See Buck v. Davis*, 137 S. Ct. 759, 773–74 (2017). Ineffective assistance of counsel occurs when counsel's performance was deficient and the petitioner was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must

show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88.

Here, the district court applied *Martinez* and properly held that Guidry did not show cause to excuse procedural default because he did not demonstrate that his ineffective assistance of trial or state habeas counsel claims were substantial. The district court also denied a COA. Jurists of reason could not debate the district court's conclusion. Guidry cannot show cause because his state habeas counsel was not ineffective for failing to raise a meritless IATC claim.

**a.**

First, Guidry argues that trial counsel was ineffective for failing to argue that Mary Gipp's testimony that Guidry killed Farah was unconstitutional hearsay. To the contrary, the record is replete with "extensive efforts" by trial counsel "to preclude, or at least limit, Gipp's testimony." As the district court catalogued, trial counsel filed a writ of state habeas corpus to prevent retrial based on Gipp's testimony. Trial counsel also tried to remove the prosecution to federal court. At pre-trial hearings, trial counsel discussed limiting Gipp's testimony and secured the State's agreement that none of the excluded hearsay evidence would be admitted under any alternate theory with one exception. Moreover, at trial, trial counsel objected throughout Gipp's questioning and persistently objected during the State's questioning about Gipp's statements to her brother.

To be sure, trial counsel could have taken other action, such as asking for a mistrial or a limiting instruction. But *Strickland* does not require trial counsel to take every possible step. Based on our review of the record, we agree with the district court that Guidry cannot overcome the procedural bar because his ineffective assistance claim based on trial counsel's handling of

Gipp's testimony lacks merit. No jurist of reason would find the district court's conclusion debatable. Thus, we deny a COA on this claim.

**b.**

Second, Guidry argues that his trial counsel at both his first and second trials were ineffective in their handling of defense expert Dr. Basinger and his testimony. Before the first trial, Guidry retained Dr. Basinger to investigate the impact of Guidry's substance abuse. During cross-examination at the first trial, Dr. Basinger said Guidry told him that he shot Farah twice in the head. The State presented that testimony in Guidry's second trial.

Guidry states that, "but for [his first] trial counsel's ineffectiveness, the State could not have called Dr. Basinger in its case in chief." He argues that such ineffectiveness in his first trial tainted his second trial. Even if we assume that Guidry's first trial counsel was ineffective for putting Dr. Basinger on the stand, Guidry points to no clearly established law that ineffective assistance in a reversed trial can justify habeas relief from conviction in a second trial. In habeas proceedings, AEDPA governs. Under § 2254(d)(1), a state court's decision is "contrary" to clearly established federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or reaches a different result than a relevant Supreme Court precedent on facts that are "materially indistinguishable." *Williams*, 529 U.S. at 405–06. Here, Guidry cites only federal-circuit-court and state-court cases. Even assuming these cases are on point—and they are not— Guidry's argument fails because he cannot show that jurists of reason would debate that there is no clearly established law *as determined by the Supreme Court* that supports his position.

Guidry also argues that trial counsel at his second trial was ineffective in failing to call his first trial counsel to impeach Dr. Basinger. As the

Supreme Court has recognized, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation," but "to ensure that criminal defendants receive a fair trial." *Id.* Thus, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.

Here, Guidry argues that a single decision by trial counsel not to call his first trial counsel was deficient performance. But Guidry does not support his claim with evidence sufficient to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotations omitted). Moreover, trial counsel took several actions to prevent the State from using Dr. Basinger's testimony in the second trial. Trial counsel sought to exclude Dr. Basinger's testimony under Fifth, Sixth, and Fourteenth Amendment theories, as well as under the attorney-client privilege. Further, during a pre-trial hearing, trial counsel cross-examined Dr. Basinger and argued to limit the scope of his testimony. We agree with the district court that trial counsel "made repeated, and zealous, efforts to exclude Dr. Basinger's testimony." Viewed in light of all the circumstances, no jurist of reason could debate the district court's finding that trial counsel's efforts met the objective standard of reasonableness.

Lastly, Guidry argues that his counsel at his second trial had a conflict of interest and therefore failed to argue that his counsel at his first trial were ineffective in putting Dr. Basinger on the stand. To establish ineffective assistance of counsel based on a conflict of interest, Guidry must show "that an actual conflict of interest adversely affected [his] counsel's performance." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). Jurists of reason could

not debate this conflict claim because counsel cannot be ineffective for failing to raise a meritless claim.

Alvin Nunnery represented Guidry in his first trial and before his second trial.  As the district court recognized, counsel cannot be "expected to argue his own ineffectiveness[.]" *Clark v. Davis*, 850 F.3d 770, 773 (5th Cir. 2017).  While Nunnery withdrew from the case prior to Guidry's second trial, his co-counsel, Loretta Muldrow, did not.  Tyrone Moncriffe was appointed and, together with Muldrow, actually represented Guidry at trial.  Guidry makes no claim that Moncriffe had an actual conflict of interest.  Nor does he point to clearly established law that the conflict of interest of counsel who withdraws can form the basis of an ineffectiveness claim that justifies habeas relief.  But because of Muldrow's continued representation, any *Strickland* argument about trial counsel's performance in the first trial could implicate Muldrow's own effectiveness.  Assuming Muldrow had an actual conflict of interest, Guidry cannot show that the conflict adversely affected his counsel's performance.  As the district court found, Moncriffe and Muldrow could not have made a successful *Strickland* argument with regard to counsel's representation in the first trial.  In that trial, Dr. Basinger's testimony was redundant and therefore did not cause a reasonable probability of a different result.  Guidry's counsel cannot be ineffective for failing to raise a meritless *Strickland* claim.  No jurist of reason could debate the district court's conclusion.

Accordingly, we agree with the district court that Guidry cannot overcome the procedural bar because his ineffective assistance claim based on trial counsel's handling of Dr. Basinger and his testimony lacks merit.  No jurist of reason would find the district court's conclusion that state habeas counsel was not ineffective for failing to make a meritless IATC claim debatable.  Thus, we deny a COA on this claim.

**c.**

Third, Guidry argues that trial and state habeas counsel were ineffective because "they did not conduct an independent investigation of the crime scene and other suspects." Guidry asserts that trial counsel failed to investigate fingerprint evidence that Guidry alleges came from Farah's car. He states that such evidence would have led trial counsel to Barlow, who better matched eyewitness descriptions. Additionally, Guidry argues that Barlow's car matched the description of the getaway car, and that human blood was found on one of the seats. Further, Guidry argues trial counsel should have investigated the hypnosis of key witnesses, ballistics evidence, and two suspects, William Planter and Bob Mann.

We note that the district court found that "the record shows that trial counsel and their investigator made efforts to interview witnesses, develop ballistics evidence, and prepare witnesses for trial." But even if we found trial counsel's performance deficient, Guidry "must show that counsel's failures prejudiced his defense." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The district court evaluated the materiality of all the evidence Guidry alleges counsel was ineffective for failing to investigate in its analysis of Guidry's *Brady* claims and concluded that none of it was material. "The materiality standard under *Brady* . . . is identical to the prejudice standard under *Strickland*." *Johnson v. Scott*, 68 F.3d 106, 109–10 (5th Cir. 1995). Thus, the district court concluded that "[f]or the same reasons that [Guidry] has not overcome the procedural bar of his related *Brady* claim,"

Guidry has not shown that his underlying ineffective assistance of trial counsel claim "would have merited relief." We cannot find this debatable.

First, Guidry asserts the getaway car was a "grey/black Corvette" that belonged to Barlow. But as the record indicates, eyewitness descriptions of the getaway care differed significantly from a "grey/black Corvette." Moreover, the Corvette Guidry describes actually belonged to a man named Podhorksy, not Barlow. Second, Guidry argues that Barlow's fingerprints were found on Farah's car. Again, the record indicates that the police report did not identify the car from which these fingerprints were taken. Indeed, the record suggests Barlow's fingerprints came from Podhorsky's Corvette, not Farah's car.

Third, Guidry argues that hypnosis of the eyewitnesses altered their trial testimony. But as the district court found, the hypnosis was not successful, did not produce an identification of Guidry, and did not alter the eyewitness accounts. Fourth, Guidry asserts that ballistics evidence showed the gun Guidry was arrested with was not the murder weapon. One ballistics report concluded the gun Guidry had was the murder weapon; other reports were inconclusive. But the gun also served to tie Guidry to Fratta—Fratta took the gun from Farah, who had purchased it, and gave it to Guidry. And, as the district court noted, other testimony and evidence established Guidry's role as the shooter.

Fifth, and finally, Guidry argues that there was evidence that Planter and Mann were stronger suspects. But this evidence was weak and speculative. On the other hand, the evidence against Guidry includes his possession of Fratta's gun and Dr. Basinger's testimony that Guidry told him he shot Farah. Viewed in light of all the evidence, there is no reasonable probability that the result would have been different had trial counsel investigated and presented this evidence. These ineffective assistance of

counsel claims lack merit and cannot overcome the procedural bar.  No jurist of reason would find the district court's conclusion on the issue of prejudice debatable.  Thus, we deny a COA on this claim.

**d.**

Fourth, Guidry argues that trial counsel was ineffective in investigating and presenting Guidry's mitigation case.  As an initial matter, defense counsel asserts that "[t]he district court explicitly recognized that the mitigation phase of Guidry's case was 'too superficial and hurried.'"  This statement is a gross mischaracterization of the district court's conclusion.  The district court actually wrote:  "Through extensive argument, *Guidry* describes his attorneys' investigation into punishment phase evidence as *too superficial and hurried*."  (emphasis added).  This type of blatant mischaracterization of the record is unacceptable and unbecoming of lawyers before our court.

Instead, the district court catalogued extensive efforts by trial counsel to investigate and gather evidence for the mitigation phase, despite time limitations placed on them by the trial court.  The defense team included an investigator and a mitigation specialist.   The team sought several continuances and obtained at least one.  Despite being denied additional continuances, the defense team had already interviewed approximately thirty witnesses prior to trial.  Additionally, trial counsel worked with Gulf Region Advocacy Center, which provided an attorney and investigators to work on Guidry's case.  By the time of trial, trial counsel had interviewed approximately forty-five witnesses and sought thirty separate sets of records relevant to mitigation.  Not satisfied with their investigation, trial counsel persisted in seeking continuances.  Trial counsel sought time to employ a trauma specialist and a prison adaptation specialist.   Trial counsel successfully had Guidry examined by a neuropsychological expert, but

decided not to call her as a witness.  These efforts certainly meet, if not exceed, the objective standard of reasonableness required of counsel.

Ultimately, trial counsel called four witnesses in mitigation.  Guidry now argues the mitigation presentation was "too superficial and hurried" and that trial counsel should have done more.  But we have said that a court "must be particularly wary of argument[s] [that] essentially come[] down to a matter of degrees.  Did counsel investigate enough?  Did counsel present enough mitigating evidence?  Those questions are even less susceptible to judicial second-guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (quotation omitted).  Moreover, Guidry does not show that the decision to only call four of the approximately forty-five witnesses was not a strategic decision by counsel. *See Strickland*, 466 U.S. at 690–91 (stating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").  It is his burden to do so.  Thus, Guidry cannot overcome the presumption that his trial counsel made such a "significant decision[] in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Even assuming trial counsel was deficient, the district court clearly held—and the record supports—that Guidry failed to show prejudice.  To establish prejudice, Guidry "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotations omitted).  "To assess that probability, we consider 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding'—and 'reweig[h] it against the evidence in aggravation.'" *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (quoting *Williams*, 529 U.S. at 397–98).

Guidry does present new mitigation evidence on federal habeas review, but it is weak or contradicted by other evidence. For example, an expert witness stated that Guidry was exposed to, and the target of, "extreme domestic violence." But this assertion was flatly contradicted by Guidry's family members at trial. That expert also asserted that Guidry suffered from lead poisoning and brain problems without any testing or empirical support. Further, Guidry's evidence about his family's intergenerational poverty and his parents' difficult lives is not relevant to "an individualized determination on the basis of the character of the individual and the circumstances of the crime." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994).

On the other side of the ledger, the State's evidence showed that Guidry presents a serious future danger to others whether in or out of prison. As the district court noted: (1) when Guidry was 16 he possessed weapons and was arrested for breaking into cars; (2) he later fired a gun during the course of a robbery; (3) he robbed a bank and was arrested after a police chase; (4) he attacked jail officers; (5) he possessed weapons and assaulted officers on death row; (6) he tried to escape death row; (7) on death row, he took an officer hostage and threatened to kill her; and (8) he tried to stab a hostage negotiator. This evidence doesn't even include the circumstances of Farah's murder itself. In light of this strong aggravating evidence, Guidry cannot meet the COA standard.

Because Guidry's claim of ineffective assistance of counsel at mitigation lacks merit under either the deficiency prong or prejudice prong of *Strickland*, he cannot overcome the procedural bar. No reasonable jurist would find the district court's conclusion on this ineffective assistance claim debatable. Accordingly, we deny a COA on this claim.

## IV.

For the foregoing reasons, we deny a COA as to all of Guidry's claims.